PATRICK J. LUCEY Governor
You have asked for an interpretation by this office of sec.20.525 (1)(c), Stats., which appropriates a contingent fund for the executive office. Specifically, you ask what limitations, if any, exist regarding the use of this fund. Further, if such limitations exist, you ask that I outline them with sufficient specificity to provide guidance for the use of the fund.
Section 20.525 (1)(c), Stats., appropriates to the Governor:
 "Contingent fund. A sum sufficient for contingent expenses at the discretion of the governor, including, without limitation because of enumeration, the operation of the executive residence and travel and miscellaneous expenses of committees created by executive order, but a statement of all such expenditures shall be rendered to the legislature at the beginning of each regular session."
I am informed by your office that since the creation of this contingent fund in 1849 it has been used by successive governors for a wide variety of purposes including travel, entertainment, staff, household furnishings, food and beverages, etc. The statute provides that a statement of all such expenditures shall be rendered to the Legislature at the beginning of each regular session. I understand that this has been done with a varying degree of specificity in the past and that there has been no move by the Legislature to limit or further restrict the use of these funds.
A brief historical overview of the legislation involved and the uses of the fund may provide some guidance. The origin of the contingent fund goes back to the time of initial statehood. The first printed statutes in 1849 contain the following language:
 "Sec. 8. Six hundred dollars is hereby annually appropriated out of the treasury of this state, (or so much thereof as may be necessary,) to defray the contingent expenses of the executive office, including clerk hire and postage, to be drawn quarterly, upon the order of the governor, and for which he is hereby required to render to the legislature an annual statement of the expenditure from this fund." Ch. 9, sec. 8, R.S. 1849. *Page 45 
This language has undergone two changes. Each change has vested more apparent discretion in the Governor while retaining the feature of an annual report to the Legislature. The present language was enacted in 1965. From 1917 to 1965 the basic language read as follows:
 "(2) Contingent expenses, rewards. Annually, beginning July 1, 1963, $10,000 for contingent expenses to be expended on the order of the governor and at his discretion; but he shall render to the legislature at the commencement of each regular session a statement of all such expenditures, of this there is allotted so much as may be necessary for payment of rewards as provided in s. 14.19." Sec. 20.360 (2), R.S. 1963.
Senate Journals are indexed back to 1921. A random sample of reports printed in Senate Journals since 1921 shows an inverse relationship between the detail of the report and the amount of money spent. For example, in 1921 then Governor John J. Blaine submitted his report for the operation of the fund from January 6, 1919 to January 3, 1921. The following items are copied from that report:
"Disbursements
 "Jan. 22, 1919, Astor Floral Co. Brooklyn, N.Y. Flowers from State of Wisconsin for grave of President Theodore Roosevelt . . . . $100.00
"* * *
 "May 12, 1919, the Hub, suit for executive messenger. . . . . . . . . . . . . . $46.00
"* * *
 "Sept. 10, 1920, Fitch Undertaking Co., Funeral expenses of Justice J.B. Winslow . . . . . . . . . . . . . . . . . $382.00
"* * *" Senate Journal, Jan. 19, 1921.
A variety of styles of such reports exists ranging from Governor Blaine's item by item statement of amount to the summary statement of disbursements contained in Governor Knowles' 1971 report for the 1969-71 Biennium reprinted below: *Page 46 
"Disbursements:
 Travel and Expenses. . . . . . . . . $6,436.36 Household Food, Staff, Official
Dinners and Receptions . . . . . . . 18,153.86
Flowers and Floral Arrangements . . . 1,152.50
Sundry and Other Disbursements . . . . 9,287.09
"Net Expenses . . . . . . . . . . . $35,029.81
"* * *" Senate Journal, Feb. 3, 1971.
I am of the opinion that within the limitations set forth below, you have broad discretion in the expenditure of these funds so that they may be used for a wide variety of purposes which are related to your functions as Governor or to the business of the state so long as the expenditures are for business-related as opposed to personal items or services. While there may be extra legal controls on the use of this fund, such as political or legislative reaction, this opinion is confined to a discussion of limitations existing under law.
CONSTITUTIONAL RESTRICTIONS
No state funds may be expended in violation of constitutional restrictions. Two constitutional restrictions on public expenditures are particularly relevant. The first is the "public purpose doctrine" and the second is the constitutional restriction on works of internal improvement contained in Wis. Const. art. VIII, sec. 10.
The "public purpose doctrine" as developed in Wisconsin case law requires that public funds be expended for public, as opposed to private, purposes. City of West Allis v. Milwaukee County,39 Wis.2d 356, cert denied, 393 U.S. 1064 (1968); State ex rel. LaFollette v. Rueter, 36 Wis.2d 96 (1967); State ex rel. AmericanLegion 1941 Convention Corporation of Milwaukee v. Smith,235 Wis. 443 (1940); State ex rel. Wisconsin Development Authorityv. Dammann, 228 Wis. 147 (1938), 1970 Wis. L. Review 1113. In general, the question of what is a public purpose is left to the Legislature which has broad discretion to determine what is, and what is not, a public purpose. There is ample reason to assume that the contingent fund provided you by the Legislature meets the public purpose test. The discretion vested in you would not invalidate the expenditure as contravening the public purpose doctrine. *Page 47 
As one scholar has observed:
 "Whatever its genesis, the elements of the rule are clear — public funds may be spent only for public purposes. Where state funds are concerned, the purpose must also be of statewide concern (a proper state
expenditure). The fact that the expenditure benefits certain individuals, or one particular class of people, more than other individuals or class, does not rob the expenditure of its public or statewide nature. Conversely, incidental benefits to the public which result from the promotion of private interests cannot justify such aid through the use of public funds. Between these two extremes, the matter of the scope of the undertaking is primarily one for the exercise of . . . discretion . . . ." William F. Eich, A New Look at the Internal Improvements and Public Purpose Rules, 1970 Wis. L. Review 1113, 1115-1116.
Wis. Const. art. VIII, sec. 10, provides in pertinent part:
 "The state shall never contract any debt for works of internal improvement or be a party to carrying on such works . . . ."
In general, a work of "internal improvement" is construction or alteration which is not necessary or convenient in carrying out the state's governmental functions. State ex rel. Warren v.Nusbaum, 59 Wis.2d 391 (1973); State ex rel. Bowman v. Barczak,34 Wis.2d 57 (1967); State ex rel. Martin v. Giessel, 252 Wis. 363
(1948). As an example, the use of state funds to construct a dog house for a personal pet or to make improvements on property not owned by the public would probably violate this constitutional restriction.
STATUTORY RESTRICTIONS
There are a number of specific statutes which deal with the expenditure of state monies. Since the contingent fund provided in sec. 20.525 (1)(c) is composed of state general program revenue these funds are subject to the restrictions normally associated with such funds unless the legislative intent appears otherwise. In addition, because you are a "state public official" as that term is defined in sec. 19.42 (8), Stats., you are subject to the Code of Ethics for Public Officials set forth in ch. 19, Stats.
Because the fund involved is provided on a "sum sufficient" basis by the Legislature, there is no ceiling on the amount of expenditures *Page 48 
which may be made from the fund in a given year. In general, the same restrictions contained in ch. 20 and elsewhere in the statutes relating to the expenditures of state funds apply to specific items for which the funds might be spent. Thus, for example, the provision in sec. 20.002 (4) prohibiting payment of indebtedness incurred prior to the time of an appropriation would be applicable and would prevent a governor from paying debts incurred prior to the time that the appropriation takes effect. Section 20.903 would have the same effect. Also, sec. 20.903 (1) provides in part that:
 ". . . it is unlawful for any state agency to authorize, direct or approve the diversion, use or expenditure, directly or indirectly, of any funds, money or property belonging to, or appropriated or set aside by law for a specific use, to or for any other purpose or object than that for which the same has been or may be so set apart . . . . "
Section 20.903 (1) would make it improper to expend monies from this fund for purposes other than that for which it was intended.
I have not attempted to be exhaustive but rather to be illustrative. The general thrust of the examples listed above should be to illustrate that funds in the contingent fund are subject to the same restrictions on expenditure as are other funds appropriated by the Legislature except where the legislative intent appears otherwise.
There are a variety of strictures on state funds which probably do not apply to the contingent funds. The words "at the discretion of the governor" are in conflict with certain restrictions on travel, moving expenses, etc. which are contained in the statutes. I am of the opinion that the restrictions on travel, moving expenses, method of expenditure contained in chs. 16 and 20 in the statutes are not applicable to the contingent fund since those restrictions conflict directly with the "discretion" granted by the Legislature and must give way to that discretion.
CODE OF ETHICS
As a "state public official" as that term is defined in sec.19.42 (8) you are subject to the restrictions on conduct contained in the Code of Ethics for State Employes, sec. 19.45
Stats. Section 19.45 provides in part: *Page 49 
 "(2) No state public official may use his public position or office to obtain financial gain for himself or his immediate family, or for any business with which he is associated.
"* * *
 "(5) No state public official may use or attempt to use his public position to influence or gain unlawful benefits, advantages or privileges for himself or others."
I take the thrust of these sections to be to prohibit the use of state monies for personal, family, or business purposes unrelated to the functions of your office. Thus, the contingent fund may not be used for purely personal items or for personal business purposes.
I am painfully aware that the distinction between one's public life and private life as an elected constitutional official is not always clear. Furthermore, there is obviously a continuum of goods and services ranging from the purely personal to the clearly business-related. It is not a business-related expense, for example, to feed and clothe yourself. On the other hand, it is certainly legitimate to feed others and entertain others in the course of your duties and to provide the furnishings and staff necessary to maintain the executive mansion.
I offer two further avenues you might pursue in determining whether a proposed use of the contingent fund would be business related rather than for personal benefit. First, you may wish to adopt as a policy adherence to the internal revenue code as it delineates business-related expenses allowable as deductions from income to private taxpayers. Second, you might consider reviewing with the state Ethics Board any proposed use of the funds which fails to fall clearly within either the business-related expense or personal benefit category.
BCL:DJH *Page 50