STATE EX REL. AMERICAN LEGION 1941 CONVENTION CORPORATION OF MILWAUKEE, Plaintiff, vs. SMITH, State Treasurer, Defendant.

*June 4—June 24, 1940.*

446

The cause was submitted for the plaintiff on the briefs of *Miller, Mack & Fairchild* of Milwaukee, and for the defendant on the brief of *G. Burgess Ela* of Madison, special counsel.

A brief was also filed by *Roberts, Roe & Boardman* of Madison, as *amicus curiæ*.

Fʀɪᴛᴢ, J. The following matters appear under the allegations in the petition to which the defendant demurred. The relator, the American Legion 1941 Convention Corporation of Milwaukee, is a nonstock, nonprofit corporation organized under the laws of this state for the purposes of presenting to the national convention of the American Legion an invitation to hold its national convention of 1941 in Milwaukee; conducting and managing the local affairs and entertainment of this convention; and doing all acts, exercising all powers and assuming all obligations necessary to accomplish these objectives. The American Legion (hereinafter called the "Legion") is a corporation created in 1919 by an act of congress, pursuant to which the Legion adopted a constitution and by-laws, under which its membership is composed of men who served in the armed forces of the United States in the War of 1917 and 1918. An essential element of its program is its annual national convention, which is its legislative body, and at which its members meet to exchange ideas and discuss methods and take action relating to the promotion of its purposes. An "Outline of Requirements" adopted by the Legion for its conventions requires that in the city in which a convention is to be held and which is then the host to the Legion, there shall be a local convention corporation, which shall have charge of all arrangements in the city; that the Legion's headquarters and department headquarters will deal directly with the chairman of the convention corporation or a representative designated by him; that the expense incident to holding the convention shall be borne by the Convention Corporation, but each delegation attending the national convention shall finance itself; that upon the selection of the convention city by the national convention, a contract in a prescribed form must be entered into by the national organization and the Convention Corporation; and that each city

desiring to extend an invitation for the next convention shall tender a certified check for $27,050 to the Legion to insure payment of estimated expenses as detailed in the contract.

In 1939 the legislature enacted ch. 451, Laws of 1939, with the following recitals:

"Whereas, War clouds are hovering over Europe and are of such wide extent as to suggest the possibility of engulfing the whole world; and . . .

"Whereas, During the past several years subversive influences have been rampant and have worked in the United States attempting to undermine the spirit of Americanism as it has existed since the adoption of the constitution of the United States of America; and

"Whereas, The American Legion has devoted itself to the maintenance of traditional principles of Americanism and has fostered the highest type of patriotic principles; and

"Whereas, The national conventions of the American Legion are annually necessary in order to maintain its effectiveness and to afford opportunity to its members to gather and exchange ideas mutually helpful to the preservation of American ideals; and

"Whereas, The national conventions of the American Legion invariably provide patriotic spectacles and inculcate and foster the highest principles of American patriotism. . . ."

By sec. 3 of ch. 451, Laws of 1939, there is appropriated the sum of $50,000 to relator "for the purpose of paying the usual and necessary expenses attendant upon the obtaining and holding of the national" convention in Milwaukee during 1941.

By sec. 4 relator is "designated and selected as an instrumentality for the execution of certain duties and functions provided in section 3."

Sec. 5 provides that none of the funds so appropriated shall be used by the relator "for any activities or functions which would be repugnant to the constitution of the state if carried on by the state," and that "the state shall never be liable or responsible for any debts or obligations of the" relator.

Sec. 6 provides that relator "shall use the funds appropriated to it . . . for the following purposes: (a) To assist in bringing the 1941 convention of the National American Legion to the state of Wisconsin; (b) to assist in the holding and the operating of the said convention if it is awarded to the state of Wisconsin."

Sec. 7 provides that relator's accounts and records shall be so kept as to distinguish clearly between the uses made of funds appropriated by the state and the uses made of funds derived from other sources, and that "all disbursements of funds appropriated by the state shall be audited by the secretary of state in the manner provided by law. If in connection with obtaining the convention the corporation is required to make a deposit with the national organization of the American Legion, the secretary of state shall draw his warrant for the amount required upon certification by the proper officers of the corporation of the amount required and of the fact that it is required."

Sec. 8 requires relator to submit to the governor at the end of the fiscal year a report of its activities performed with the appropriated state funds.

Sec. 9 provides "If any provision, sentence, clause or word of this act or the application thereof to any person or circumstance shall be held invalid, the remainder of this act and the application of such provision . . . shall not be affected thereby."

In December, 1939, the relator's officers certified that the sum of $27,050 was required to make a deposit with the Legion's national organization in order to obtain the 1941 convention for Milwaukee. This certificate, together with a voucher for the amount stated, was presented to the secretary of state, who was requested to issue his warrant for the payment thereof to the state treasurer. The latter refused to honor the warrant on the ground that ch. 451, Laws of 1939, is not a valid constitutional enactment for the following reasons. The intended appropriation of $50,000 and the proposed uses stated in ch. 451, Laws of 1939, are not for such a state-wide public purpose as is

necessary in order to constitute a valid appropriation and use of state funds because (1) the relator is solely and strictly but a private autonomous corporation, even though it is a nonstock, nonprofit organization, and the designated purpose for the appropriation is to assist in bringing and holding a national convention of the American Legion, which is but another private autonomous corporation. (2) Under the terms of the act, part and possibly all of the appropriation may be used for the purpose of attempting to obtain the convention, which may not be awarded to Milwaukee even though funds are spent to accomplish that purpose; and in respect to the sum requested by relator in order to make the required deposit of $27,050, there is no provision which requires the relator to return this fund to the state if the convention is not so awarded. (3) No state-wide public purpose can be said to be served by the use of that deposit for the purposes listed in a prescribed contract which the relator would be required to make with the Legion, or by additional expenditures which the contract would require to be borne by the relator for all other expenses in connection with the holding of the convention, which should include certain other stated purposes. Defendant further contends that the act is invalid because it delegates inherent powers of the legislature in that the provisions which purport to state the purposes for which the appropriations can be used are too broad and grant too great a discretion to the beneficiary of the appropriation to serve as standards. In this connection, defendant claims that because there is no specific limitation in the act as to the use to which the deposit may be put, this part of the appropriation becomes effective only if the Legion requires a deposit, and then in such amount as it may require; and the proposed vesting of this discretion in the Legion to define the amount of the deposit and purposes for which it is to be used constitutes a delegation of legislative power

and renders the whole act invalid; and that, even if certain of the functions, which are to be carried on by the Convention Corporation, might meet the test of public purpose, the matter could not possibly be administered to assure the use for such purpose, and because it would be impracticable to obtain a proper audit of claims which might be made against the fund in question, the determination by the secretary of state as to whether a particular expenditure was for a public or private purpose, rests entirely too much in the field of conjecture and uncertainty.

In passing upon these contentions there are applicable the following rules. An appropriation of moneys derived from public taxes can lawfully be expended only for public purposes; and, in addition, to sustain an appropriation of state funds the public purpose must also be state-wide. Although a tax must be spent at the level at which it is raised, "the fact that an expenditure of public funds benefits certain individuals or one class more immediately than it does other individuals or another class does not necessarily deprive the expenditure of its public character." *State ex rel. Wisconsin Dev. Authority v. Dammann,* 228 Wis. 147, 178, 182, 183, 277 N. W. 278, 280 N. W. 698.

"To justify the court in arresting the proceedings and declaring the tax void, the absence of all possible public interest in the purposes for which the funds are raised must be clear and palpable—so clear and palpable as to be perceptible by every mind at the first blush." *Brodhead v. Milwaukee,* 19 Wis. *624, *652.

"If a public purpose can be conceived which might rationally be deemed to justify the act, the court cannot further weigh the adequacy of the need or the wisdom of the method." *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 549, 90 N. W. 1098.

While "It is undoubtedly the duty of the legislature which imposes or authorizes municipalities to impose a tax, to see that it is not to be used for purposes of private interest instead of a public use . . . the courts can only be justified

in interposing when a violation of this principle is clear and the reason for interference cogent. And in deciding whether, in the given case, the object for which the taxes are assessed falls upon the one side or the other of this line, they must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation." *Citizens' Savings & Loan Asso. v. Topeka,* 20 Wall. 655, 670, 22 L. Ed. 455.

"The rule that the benefits to the public must be direct and not remote and that the past course or usage of government is to be resorted to for guidance must in each case be considered in the light of the principle that the legislature has a very wide discretion to determine what constitutes a public purpose, and that courts will not interfere unless at first blush the act appears to be so obviously designed in all its principal parts to benefit private persons and so indirectly or remotely to affect the public interest that it constitutes the taking of property of the taxpayers for private use. It is to be observed that the tendency of later cases is toward greater liberality in characterizing taxes or appropriations as public in purpose." *State ex rel. Wisconsin Dev. Authority v. Dammann, supra,* p. 182.

The mere fact that the appropriation is to reimburse a private corporation for expenditures incurred by it to effect purposes specified in an act does not render the appropriation invalid if the services are for a public purpose.

"The test to be applied in determining whether a particular agency may be employed by the state or some particular subdivision thereof by legislative authorization, to perform any particular work, is not whether the agency is public, but whether the purpose is public within the legiti-

mate functions of our constitutional government. If the purpose be public and constitutional, and the agency be an appropriate means to accomplish it, and not expressly or by necessary implication prohibited by state or national constitution, its employment, under reasonable regulations for control and accountability to secure public interests, is legitimate and constitutional." *Wisconsin Industrial School for Girls v. Clark County,* 103 Wis. 651, 667, 79 N. W. 422; *State ex rel. Wisconsin Dev. Authority v. Dammann, supra,* p. 176.

In view of the facts which are stated in the recitals in the act that the "Legion has devoted itself to the maintenance of traditional principles of Americanism and has fostered the highest type of patriotic principles;" that its national conventions are annually necessary to "afford opportunity to its members to gather and exchange ideas mutually helpful to the preservation of American ideals;" and that these conventions invariably "provide patriotic spectacles and inculcate and foster the highest principles of American patriotism;" together with the facts which are alleged in relator's petition in regard to the origin, organization, membership, character, and purposes of the Legion, including the holding of its national conventions, there are evidently abundant grounds for the legislature to conclude, as it apparently did in making the appropriation, that the holding of the national convention in this state with the use of the funds appropriated will serve to inspire, inculcate, and promote the highest type of patriotic sentiments and principles of American patriotism, and thus aid in the preservation of our American ideals and the perpetuation of our state and national democratic systems of government under our constitutions. These are clearly public purposes of state-wide importance, and particularly so in this critical period, when we are shocked and distressed by the reversion in other countries to systems of despotism and dictatorship. As is stated in Judson, Taxation (2d ed.), p. 407, § 386,—

"Whatever legitimately tends to inspire patriotic sentiments, and to enhance the respect of citizens for the institutions of their country, and incites them to contribute to its defense in time of war, has been held to be a lawful public purpose, such as will justify the exercise either of the power of taxation or of the power of eminent domain."

That was approved and applied in *State ex rel. Atwood v. Johnson,* 170 Wis. 218, 232, 175 N. W. 589, in which the appropriation of money under the Soldiers' Bonus Law (ch. 667, Laws of 1919), to be awarded to state residents who were inducted into and served in the armed forces of the nation, was held to be for a public purpose. And as this court said in *State ex rel. Atwood v. Johnson,* 170 Wis. 251, 259, 176 N. W. 224,—

"Since the continuity of a republic depends largely upon the patriotism and the enlightenment of its people, the stimulation of both becomes not only a public purpose but a public necessity. Both must be zealously fostered in order to maintain national security."

See also *Brodhead v. Milwaukee, supra; People v. Westchester Co. Nat. Bank,* 231 N. Y. 465, 132 N. E. 241; *In re Opinion of the Justices,* 190 Mass. 611, 77 N. E. 820; *Allied Architects' Asso. v. Payne,* 192 Cal. 431, 221 Pac. 209; *Stephens v. Chambers,* 34 Cal. App. 660, 168 Pac. 595; *Barrow v. Bradley,* 190 Ky. 480, 482, 227 S. W. 1016. The fact that the furtherance of these purposes is likewise of nation-wide importance does not alter or minimize in any degree their state-wide character. As this court has said,—

"The common defense by the nation can only be successfully maintained by co-operation of the states, hence when a war is waged by the nation those supporting it are performing services as well for their respective states as for the nation." *State ex rel. Atwood v. Johnson,* 170 Wis. 218, 230, 175 N. W. 589.

It is the duty of this and every other state, as an integral member of our federal nation, to aid in the preservation of the nation, and to that end do everything within its means and power. That includes the stimulation and promotion of patriotism by quickening the perception of our citizens that there is a sacred duty to defend the government in time of need, as well as to demonstrate that such defense is appreciated, and thus assure to the nation the loyal support of its citizenry. These public purposes are clearly of as state-wide concern and importance as the promotion of health or education, the conservation of fish and game, or the conduct of police and fire departments, etc. See *State ex rel. Harbach v. Mayor,* 189 Wis. 84, 206 N. W. 210; *Monka v. State Conservation Comm.* 202 Wis. 39, 231 N. W. 273; *Van Gilder v. Madison,* 222 Wis. 58, 83, 267 N. W. 25, 268 N. W. 108. Consequently, in so far as the legislature believed that these purposes would be furthered by the holding of the Legion's convention here, it was within its province to make an appropriate appropriation to assist in holding and operating the convention. Appropriations of state funds to so assist the holding of conventions or encampments in some locality in this state by similar patriotic organizations have been made and so used annually for many years in this state without any question as to the validity thereof. See ch. 19, Laws of 1919, Grand Army of the Republic; ch. 186, Laws of 1921, Wisconsin Department of the Spanish War Veterans Association; ch. 104, Laws of 1927, Wisconsin Department of the American Legion; ch. 124, Laws of 1929, Disabled American Veterans of the World War; and ch. 530, Laws of 1935, which made an appropriation to be used in connection with the national encampment at Madison of the Grand Army of the Republic. The unquestioned course and usage of our state government, which is evidenced by these appropriations and the use to which they were put with the apparent

acquiescence and sanction of the people at large during so many years, are of great significance in considering whether such use serves a state-wide public purpose and is proper in the maintenance of good government. *State ex rel. Wisconsin Dev. Authority v. Dammann, supra,* pp. 176 *et seq.* Likewise it was within the power of the legislature to designate the relator as an instrumentality of the state for the use of the appropriation for valid public purposes if the legislature considered it desirable,—as it presumably did,—to promote the holding of the convention by means of and with the aid of a so-called Convention Corporation, such as the relator. *State ex rel. Wisconsin Dev. Authority v. Dammann, supra,* p. 179.

The fact that the convention is to be held in but one city will not render the public purposes served thereby merely local, instead of state-wide. In respect to defendant's contention on this ground, it may suffice to note that the appropriations of state funds to the patriotic organizations above mentioned were used in holding encampments in but one city, and this usage and custom have not been challenged. In a way such use of an appropriation is not unlike the use thereof by a state educational institution, which is located and conducted in but one city. In such cases as in the case of the convention in question, although the operation is in but one locality and membership and active participation are limited to those who have the qualifications prescribed as to eligibility, qualified members or participants can and do come from all parts of the state, and the ultimate effect and public benefits rendered are state-wide and not confined to but the one city. Likewise the effect and benefits which result from the stimulation and promotion of patriotism by the holding of the Legion's convention are not confined to but those who can participate by actual attendance in the convention city. They constitute but a small portion of the multitudes interested in and inspired by the

excellent reports and broadcasts through modern press and radio facilities regarding the activities at patriotic gatherings· of such magnitude and significance, and the active participation in the public discussions and the exchange of ideas concerning the many problems facing our nation today by speakers of national reputation and prominence in public affairs. And our interest therein and the inspiration afforded thereby are naturally augmented when these activities take place in our midst, so to say, as citizens of this state.

Likewise unsound is defendant's argument that the holding of the convention by the Legion is but analogous to the holding of a meeting of many stockholders of a private business corporation. No comparable public service is rendered by such a corporation. The American Legion is a corporation of members and not of stockholders. Its objectives, as is stated in the preamble of its constitution, are,—

"To uphold and defend the constitution of the United States of America; to maintain law and order; to foster and perpetuate a one hundred per cent Americanism; to preserve the memories and incidents of our association in the Great War; to inculcate a sense of individual obligation to the community, state and nation; to combat the autocracy of both the classes and the masses; to make right the· master of might; to promote peace and good will on earth; to safeguard and transmit to posterity the principles of justice, freedom and democracy; to consecrate and sanctify our comradeship by our devotion to mutual helpfulness."

Thus, instead of dividends, its objectives are in the elevation of the spirit and ideals which make for good citizenship, and the welfare of all citizens, as well as its own members, is furthered thereby.

In view of the conclusions stated above, the appropriation made by the act is not invalid in so far as it is to be used "for the purpose of paying the usual and necessary expenses attendant upon the . . . holding" of the conven-

tion in Milwaukee during 1941 (sec. 3), and "to assist in the holding and the operating" the convention if it is awarded to this state (sec. 6 (b) ) ; and in so far as the relator is selected as an instrumentality of the state for the execution of certain duties and functions under the act. If indebtedness is incurred or expenditures are made by the relator to assist in the holding and the operating of the convention, after it is awarded to this state, and the items therefor are audited by the secretary of state in the manner provided by law as proper to be paid out of the appropriated fund, for the public purpose held valid herein, then such payment thereof must be made to the relator. In that event, if the use of money appropriated and to be paid under these conditions to assist in holding and operating the convention will not effectuate the public purpose intended by the legislature sufficiently to justify the expenditure, then as was said in *State ex rel. Atwood v. Johnson,* 170 Wis. 251, 259, 176 N. W. 224, "the juristic reply is that that is a legislative question pure and simple, unless it clearly appears that it has no tendency at all to do so." But at this time it cannot be assumed that the relator will attempt wrongfully to obtain payment of any of the public fund to reimburse it for an expenditure for a purpose which is not authorized by the act; or that the relator will violate the inhibition in sec. 5 thereof that it shall not use or expend any of the appropriated fund for any activities or functions which would be repugnant to the state constitution if carried on by the state. Neither can it be assumed that the secretary of state will audit any item or issue a warrant for the payment thereof in disregard of that inhibition.

Likewise, in so far as the use of the appropriation is authorized "to assist in the holding and the operating" of the convention, the act cannot be held invalid, as defendant contends, on the ground that by reason of the provision in sec. 7 thereof, that none of the appropriated funds can be

disbursed excepting as audited by the secretary of state in the manner provided by law, there is an invalid delegation of legislative power in that the provision in sub. (b) of sec. 6 as to the purpose for which the appropriation can be used is not sufficiently circumscribed and grants too great a discretion to the beneficiary. It suffices to note in this respect that the terms used in that subsection are substantially in the same form and as definite in prescribing standards as the terms which were held sufficiently definite for that purpose in making the appropriations which were held valid by the court in *State ex rel. Wisconsin Dev. Authority v. Dammann, supra;* and that, likewise, the terms in question are substantially similar to those which have been used for many years in making appropriations to be used for public purposes by the privately owned or controlled organizations or corporations which are referred to in the court's final opinion in that case. See pp. 177, 178 of 228 Wis.

On the other hand, there does not seem to be any judicial precedent or any sanction which can be inferred from any course or usage of the government by reason of enactments to authorize the use of an appropriation for the purpose of assisting in bringing some such convention to the state; or to enable a private corporation, like the relator, to make a deposit prior to obtaining such a convention with a national organization for an amount required by it, "If" (as is provided in sec. 7 of the act), "in connection with obtaining the convention the corporation [relator] is required to make a deposit with the national organization," and there is a certificate by the proper officers as to the amount required and of the fact that it is required. It was under the provision to that effect in the act that the relator's officers certified that the sum of $27,050 was required of the relator by the Legion as such a deposit; and it was upon the filing of that certificate that the secretary of state drew the warrant for that sum, which the defendant refused to honor upon

the presentation thereof to him as state treasurer. Under the Legion's "Outline of Requirements" for its national convention the deposit of that sum by the relator's tender, prior to the awarding of the convention, of a certified check for that amount payable to the national treasurer is required "to insure payment of estimated expenses as detailed in" a contract, which is to be entered into between the Legion and the Convention Corporation. In respect to this deposit, the determination as to whether it is to be made and, if so, what amount is to be required, as well as for what items that amount may be used, is left, under the act, with the third party (*i. e.,* the national organization). Thereby the legislature has in effect attempted to delegate to the national organization the determination as to whether or not a deposit shall be required and has likewise delegated the determination as to the amount which may be required if it does require the deposit. As a consequence, if no such deposit is required, the part of the appropriation intended to be for that purpose would not become effective for that purpose. Neither is there anything in the act which would prevent the national organization from requiring the entire amount of the appropriation in the form of a deposit. In other words, the determination by the third party, which is not even designated as an instrumentality to function for the state, may or may not absorb the entire appropriation, and unless and until the third party acts and determines that a deposit is necessary and the amount thereof, there is no appropriation which has become effective for that purpose. In so far as this part of the appropriated fund is concerned, whether it becomes effective or not under the act depends solely upon the whim or discretion of the national organization both as to whether any deposit is "required," and if so, the "amount required." Consequently, in these respects the legislature has virtually delegated to the national organization legislative power, and there is such a complete ab-

dication of its power that the provision in sec. 7, which is in question, is invalid. *State ex rel. Zimmerman v. Dammann,* 229 Wis. 570, 575, 283 N. W. 52; *Gibson Auto Co. v. Finnegan,* 217 Wis. 401, 259 N. W. 420.

Moreover, the obvious purpose of the required deposit is to guarantee, or as is stated in the Legion's "Outline of Requirements," "to insure payment of estimated expenses" which are to be paid by the relator in connection with the holding of the convention. Thus, public funds of the state were to be advanced and used in aid of a private corporation by the actual removal of the amount required by the Legion as the deposit from the custody and possession of the state treasurer to enable the relator to tender a certified check for that amount to the Legion, as security for relator's performance of its obligation under a contract made between it and the Legion. If, instead of thus providing for the payment and use of the money of the state, the act had provided that the credit of the state was to be given or loaned in aid of the relator to insure such performance of its obligations, the provision to that effect would clearly be in violation of sec. 3, art. VIII, Const., which reads, "The credit of the state shall never be given, or loaned, in aid of any individual, association or corporation." As the giving or loaning of the state's credit is expressly prohibited and the authorization to use public funds of the state as security in aid of the relator, which is proposed in sec. 7 of the act, is obviously to accomplish the prohibited purpose, the authorization in question must likewise be considered beyond the legislative power.

Furthermore, the advance of the requested sum of $27,050 by the state to the relator before the latter has incurred or paid any expense as to which it is entitled to reimbursement would prevent the secretary of state from performing his duties under sec. 2, art. VI, Const., as the *ex officio* auditor of the state, and under the provision in sec. 14.30 (10),

Stats., which requires him to "examine, determine and audit, according to law, the claims of all persons against the state." Nowhere in the act is there any requirement that if the deposit is made, but the convention is not awarded to this state, the amount or any unused part thereof must be returned to the state treasurer, and that in either the latter event, or if relator claims to have used all or any part of the deposited amount, the secretary of state shall have the opportunity to perform his duties under sec. 14.30 (10), Stats., as auditor. The proposed advance of the money to the relator by the state without any provision in the act for its retention of any further control as to the use thereof for an authorized public purpose would vest the disposition thereof in solely the relator or in the Legion after the relator's tender of the certified check therefor. Thus, as the result of the advance to the relator of part of the appropriation before it has incurred any expense or paid any bill, because of which its claim to be reimbursed therefor can be examined and audited by the secretary of state prior to his issuance of a warrant for payment, the safeguards under the established practice that all bills must be presented and vouchers filed with the secretary of state to enable him to discharge his duties as the constitutional auditor *ex officio,* by passing upon the rectitude of the claims before he issues a warrant upon the state treasurer for the payment thereof, would be avoided and defeated.

Likewise, in so far as the deposit of the amount, which the state is to advance to the relator, is required in order to obtain the award of the convention to the state, and also in so far as the relator is authorized to use part or even all of the balance of the appropriation "to assist in bringing" the convention to this state, as is provided in sec. 6 (a) of the act, the provisions cannot be sustained as valid. In so far as the proposed use of the public funds in order to obtain the convention or to assist in bringing it here is con-

cerned, it is evident that it is contemplated under the terms of the act that the convention may not be awarded to this state even though funds obtained from it are expended therefor. Consequently, the use of the appropriated fund for these purposes would not be for the promotion of a patriotic purpose. The probability that the convention, if held in Wisconsin, would serve a state-wide public purpose by promoting patriotism will not justify the expenditure of public funds to assist in endeavoring to bring the convention here. That of itself is not a state-wide public service and no public purpose is served until the ultimate holding of the convention itself in this state. The attempt to bring the convention here may not be successful. That is at best a gamble and lies so largely in the field of conjecture and speculation that the possibility of serving a public purpose or deriving any direct public benefit or advantage as the result of using public funds to assist therein is so uncertain and remote that it cannot be considered a public purpose.

It follows that the provisions of the act are void in so far as they purport to authorize the use of any part of the fund appropriated thereby for the purpose stated in sec. 6 (a), to wit: "To assist in bringing the 1941 convention of the National American Legion to the state of Wisconsin;" and also in so far as it is provided in sec. 7 of the act that "If in connection with obtaining the convention the corporation is required to make a deposit with the national organization of the American Legion, the secretary of state shall draw his warrant for the amount required upon certification by the proper officers of the corporation of the amount required and of the fact that it is required." However, the fact that these provisions are void does not necessarily render the entire act invalid. It is provided in sec. 9 thereof that,—

"If any provision, sentence, clause or word of this act or the application thereof to any person or circumstance shall

be held invalid, the remainder of this act and the application of such provision . . . shall not be affected thereby."

These provisions are the same as the provisions in sec. 199.07, Stats., which were involved in *State ex rel. Wisconsin Dev. Authority v. Dammann, supra,* p. 198, as to which the court said:

"This clause is very broad and is entitled to great weight as an indication of legislative intent in determining whether the unobjectionable portions of the act can stand. The clause, of course, is not conclusive, and if so little of the act remains as not to leave a 'living, complete law capable of being carried into effect "consistent with the intention of the legislature which enacted it in connection with the void part" ' it is the duty of the court to decline to sustain the act in part in spite of a separability clause. [Citations.] Here, however, the portions of the act held to be proper and valid constitute a substantial part thereof, and the Wisconsin Development Authority retains four important purposes for which the money appropriated may properly be spent. If the part of an act remaining independently of the invalid portion constitutes a complete law in some reasonable aspect, it will be sustained in part unless the legislature has indicated that it only intended it to be effective as an entirety. [Citations.]"

These conclusions are likewise applicable to the provisions in ch. 451, Laws of 1939; and as the provisions thereof, which remain independently of sec. 6 (a), and the last sentence (quoted above) of sec. 7, and after eliminating the word "obtaining" from sec. 3, are proper and valid and constitute a substantial part of the act and a complete law in some reasonable aspect, which still provides an important public purpose for which the appropriated money may be properly spent, these remaining provisions can and must be sustained. Consequently, the relator is entitled to a declaratory judgment to that effect in response to sub. (b) of the prayer for judgment in its petition. On the other hand,

the relator's prayer for a peremptory writ of *mandamus* must be denied.

*By the Court.*—In the exercise of the original jurisdiction of this court, it is adjudged and decreed that the warrant drawn and issued by Fred R. Zimmerman, as secretary of state to the defendant John M. Smith, as state treasurer, to make payment of the sum of $27,050 to the relator, the American Legion 1941 Convention Corporation of Milwaukee, is hereby declared void and of no effect; and that the relator's application for a peremptory writ directed to the said defendant commanding him to honor said warrant be and is hereby denied.

It is further adjudged and decreed that the provisions in ch. 451, Laws of 1939, constitute a valid enactment and have become and are law and in force and effect with the exception of the provision in sec. 6 (a) which reads:

"To assist in bringing the 1941 convention of the National American Legion to the state of Wisconsin;"—

and the provision in that part of sec. 7 which reads:

"If in connection with obtaining the convention the corporation is required to make a deposit with the national organization of the American Legion, the secretary of state shall draw his warrant for the amount required upon certification by the proper officers of the corporation of the amount required and of the fact that it is required;"—

and excepting in so far as it is provided in sec. 3 that one of the purposes of the appropriation is the payment of expenses attendant upon the "obtaining" of said convention; and it is further adjudged and decreed that the provisions so excepted are void and of no force or effect.