STATE EX REL. BOWMAN, Relator, v. BARCZAK, County Treasurer, and another, Respondents.

*January 30—February 28, 1967.*

For the relator there were briefs by *Michael, Best & Friedrich,* attorneys, and *Frank J. Pelisek* and *John K. MacIver* of counsel, all of Milwaukee, and oral argument by *Mr. Pelisek.*

For the respondents there was a brief by *Robert P. Russell,* corporation counsel of Milwaukee county, for *Max A. Barczak,* county treasurer, and by *Quarles, Herriott, Clemons, Teschner & Noelke,* for Milwaukee County Industrial Development Corporation, attorneys, and *Lester S. Clemons, Ross Shumaker,* and *Robert H. Diaz, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Diaz.*

GORDON, J.

### The Public-Purpose Doctrine.

The principal challenge to the constitutionality of sec. 59.071, Stats., concerns the application of the public-purpose doctrine. Unlike most of the other constitutional stabs at this statute, discussed *infra,* no specific clause in the constitution establishes this doctrine; nevertheless, the public-purpose doctrine is firmly accepted as a basic constitutional tenet. Thus, in spite of its obscure origins, there is absolutely no challenge to the premise that public appropriations may not be used for other than public purposes.

The development of this unwritten constitutional keystone has been examined in Mills, The Public Purpose Doctrine in Wisconsin, 1957 Wisconsin Law Review, 40. The author attributes the doctrine to a "judicial articula-

tion of the belief that governmental power should be used for the benefit of the entire community" and states that the first Wisconsin case acknowledging the doctrine was *Soens v. Racine* (1860), 10 Wis. 214 (*271).

Upon the rehearing in *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 175, 277 N. W. 278, 280 N. W. 698, this court stated that for public funds to be appropriated for a private business "would be to take the property of one citizen or group of citizens without compensation and to pay it to others, which would constitute a violation of the equality clause as well as a taking of property without due process of law." In *Heimerl v. Ozaukee County* (1949), 256 Wis. 151, 158, 40 N. W. (2d) 564, the court attributed the public-purpose doctrine to sec. 4, art. IV of the United States constitution:

"Taxation for a private purpose is prohibited by the clause of the federal constitution that guarantees to every state a republican form of government (sec. 4, art. IV), as such a form of government forbids the raising of taxes for anything but a public purpose."

Whatever problem may be presented by our effort to understand the genesis of the public-purpose doctrine or to describe its constitutional gestation, such inquiries are insignificant in comparison to the problem of determining if a given course of conduct offends the doctrine. A large number of cases attest to the fact that this court has wrestled with the problem for the past one hundred years, and the Wisconsin experience is little different from that encountered by her sister states.

In recent years the courts of many states have been called upon to weigh the constitutional validity of legislation designed to encourage industry to locate or to expand to the economic benefit of such state and its communities. At the oral argument, counsel informed the court that the legislatures of 38 states have enacted industrial development legislation. In order to decide

whether such legislation is consistent with the public-purpose doctrine, we are obliged to ascertain the factors which distinguish a public purpose from a private purpose. Unfortunately, this is not a task which allows either a simple or clear-cut answer.

In *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 180, 277 N. W. 278, 280 N. W. 698, the court, upon rehearing, suggested some of the factors to be considered in ascertaining whether an appropriation is proper:

"The course or usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, and the objects and purposes which have been considered necessary for the support and proper use of the government are all material considerations as well as the rule that to sustain a public purpose the advantage to the public must be direct and not merely indirect or remote."

Moreover, the court went on, at page 182, to recognize that the concept of public purpose is not a static one and that the legislature is not restricted to the concept of public purpose as it had been understood in years gone by:

"The rule that the benefits to the public must be direct and not remote and that the past course or usage of government is to be resorted to for guidance must in each case be considered in the light of the principle that the legislature has a very wide discretion to determine what constitutes a public purpose, and that courts will not interfere unless at first blush the act appears to be so obviously designed in all its principal parts to benefit private persons and so indirectly or remotely to affect the public interest that it constitutes the taking of property of the taxpayers for private use. It is to be observed that the tendency of later cases is toward greater liberality in characterizing taxes or appropriations as public in purpose, doubtless in recognition of the fact, as was stated in *Laughlin v. City of Portland, supra,* that:
" 'Times change. The wants and necessities of the people change. The opportunity to satisfy those wants

and necessities by individual efforts may vary. . . . On the one hand, what could not be deemed a public use a century ago, may, because of changed economic and industrial conditions, be such today. . . . Its two tests are: First, the subject matter, or commodity, must be one of "public necessity, convenience or welfare." . . . The second test is the difficulty which individuals have in providing it for themselves.' "

In sub. (2) of sec. 59.071, Stats., the Wisconsin legislature has asserted with unequivocal clarity its finding that Wisconsin has suffered from a loss of industry to other states and that this has caused an increase in unemployment in this state. The legislature went on to assert that the economic impact of such unemployment was a serious menace to the general welfare of the people of the entire state. It further found that there was a need for more capital within the state. To remove any uncertainty as to the legislature's position, the enactment contains an express declaration that public money spent to alleviate this situation is for public purposes.

As noted in *State ex rel. Wisconsin Development Authority v. Dammann,* quoted above, "a very wide discretion" is given to the legislature regarding its pronouncement as to public purpose. In that case this court also indicated judicial reluctance to intrude when the enactment does not appear "at first blush" to be for a private purpose. Nevertheless, the constitutional question remains as to how far a court should go in deferring to the conclusions of the legislature. We fully recognize that "the hierarchy of community values is best determined by the will of the electorate" and that "legislative decisions are more representative of popular opinion because individuals have greater access to their legislative representatives." See Note, The "Public Purpose" of Municipal Financing for Industrial Development, 70 Yale Law Journal (1960–1961), 789, 797.

Nevertheless, when legislation is challenged, the justices of this court deem it their unavoidable burden

under the constitution to examine such legislation and to assess its realistic operation. Although the legislative declarations are entitled to great weight, we may not blindly accept at full value even the most elaborate prefatory expressions concerning community need, economic impact, or public purpose. *David Jeffrey Co. v. Milwaukee* (1954), 267 Wis. 559, 578, 66 N. W. (2d) 362.

The greater weight of authority has upheld laws under the public-purpose doctrine which permit expenditures by redevelopment authorities and by agencies for the purposes of encouraging industry, reducing unemployment and bringing in needed capital. Alabama: *Newberry v. City of Andalusia* (1952), 257 Ala. 49, 57 So. (2d) 629; *In re Opinion of the Justices* (1951), 256 Ala. 162, 53 So. (2d) 840; Alaska: *DeArmond v. Alaska State Development Corp.* (Alaska, 1962), 376 Pac. (2d) 717; Connecticut: *Roan v. Connecticut Industrial Building Comm.* (1963), 150 Conn. 333, 189 Atl. (2d) 399; Delaware: *Opinion of the Justices* (1962), 54 Del. 366, 177 Atl. (2d) 205; Iowa: *Green v. City of Mt. Pleasant* (1964), 256 Iowa 1184, 131 N. W. (2d) 5; Kansas: *State v. City of Pittsburg* (1961), 188 Kan. 612, 364 Pac. (2d) 71; Kentucky: *Industrial Development Authority v. Eastern Kentucky Regional Planning Comm.* (Ky. 1960), 332 S. W. (2d) 274; Louisiana: *Miller v. Police Jury of Washington Parish* (1954), 226 La. 8, 74 So. (2d) 394; Maryland: *Frostburg v. Jenkins* (1957), 215 Md. 9, 136 Atl. (2d) 852; Michigan: *Gaylord v. Beckett* (1966), 378 Mich. 273, 144 N. W. (2d) 460; Mississippi: *Albritton v. City of Winona* (1938), 181 Miss. 75, 178 So. 799; New Jersey: *Roe v. Kervick* (1964), 42 N. J. 191, 199 Atl. (2d) 834; New Mexico: *Deming v. Hosdreg Co.* (1956), 62 N. M. 18, 303 Pac. (2d) 920; North Dakota: *Gripentrog v. City of Wahpeton* (N. D. 1964), 126 N. W. (2d) 230; Oklahoma: *Harrison v. Claybrook* (Okla. 1962), 372 Pac. (2d) 602; Rhode Island: *Opinion to the Governor* (1952), 79 R. I. 305, 88 Atl. (2d) 167; Tennessee: *Holly v. City of Elizabethton* (1951), 193 Tenn.

46, 241 S. W. (2d) 1001; West Virginia: *County Court v. Demus* (1964), 148 W. Va. 398, 135 S. E. (2d) 352.

A minority has struck down such laws on the grounds that the expenditures are for private rather than public purposes. Florida: *State v. Clay County Development Authority* (Fla. 1962), 140 So. (2d) 576; Georgia: *Smith v. State* (Ga. 1966), 150 S. E. (2d) 868; Idaho: *Moyie Springs v. Aurora Mfg. Co.* (1960), 82 Idaho 337, 353 Pac. (2d) 767; Maine: *Opinion of the Justices* (1957), 152 Me. 440, 131 Atl. (2d) 904; Massachusetts: *Opinion of the Justices* (1955), 332 Mass. 769, 126 N. E. (2d) 795; Nebraska: *State ex rel. Beck v. City of York* (1957), 164 Neb. 223, 82 N. W. (2d) 269; New Hampshire: *Opinion of the Justices* (1965), 106 N. H. 180, 207 Atl. (2d) 574; Ohio: *State v. Brand* (1964), 176 Ohio St. 44, 197 N. E. (2d) 328.

See also Pinsky, State Constitutional Limitations on Public Industrial Financing: An Historical and Economic Approach, 111 University of Pennsylvania Law Review (1963), 265; Note, Legal Limitations on Public Inducements to Industrial Location, 59 Columbia Law Review (1959), 618; Note, Incentives to Industrial Relocation: The Municipal Industrial Bond Plans, 66 Harvard Law Review (1953), 898.

Sec. 59.071, Stats., like any other enactment of the legislature, is entitled to every presumption of constitutionality. *ABC Auto Sales, Inc., v. Marcus* (1949), 255 Wis. 325, 38 N. W. (2d) 708. In upholding a law similar to the one at bar, the Iowa supreme court, in *Green v. City of Mt. Pleasant* (1964), 256 Iowa 1184, 1196, 131 N. W. (2d) 5, pointed out what the presumption of constitutionality means in terms of the burden of proof which is imposed upon the person attacking the law:

"Every reasonable presumption must be called to support the Act. Plaintiff must overcome these presumptions and negative every reasonable basis which may sustain the statute."

In *State ex rel. Zillmer v. Kreutzberg* (1902), 114 Wis. 530, 549, 90 N. W. 1098, this court said:

"[I]f a public purpose can be conceived which might rationally be deemed to justify the act, the court cannot further weigh the adequacy of the need or the wisdom of the method."

It is especially difficult for this court to pass judgment upon the constitutional validity of this particular application of sec. 59.071, Stats., because this lawsuit is an original action; the only facts before us are the statute itself and the authorization of the Milwaukee county board of supervisors to have the treasurer of Milwaukee county pay $25,000 to the Milwaukee County Industrial Development Corporation to be used in paying its operating expenses.

Sub. (6) of the statute grants broad operating authority to the industrial development agency. For example, under sub. (6) (a) the agency may "grant financial aid and assistance to any industrial development project, which aid and assistance may take the form of loans either secured or unsecured, contracts of sale and purchase, leases and such other transactions as are determined by the agency." Sub. (6) (b) authorizes the agency to acquire real or personal property by purchase or lease and to redevelop the same, as well as to sell, lease and subdivide the same for industrial use. Other subsections give the agencies the power to borrow money and to lend it.

The case before us involves only a threshold expenditure. It does not go to the pith of the functions or the operations of an industrial development corporation. Although the sum is large, the $25,000 is nothing more than a housekeeping expenditure. This court has no way of knowing how this industrial development corporation will perform, and the instant lawsuit does not provide the court with the occasion to determine whether the constitutional strictures apply to the actual operation of the development corporation.

In view of the legislative declaration as to public need and public purpose, sec. 59.071, Stats., is not unconstitutional upon its face. However, our decision cannot in any way be construed as containing an imprimatur of approval upon any actual performance by an industrial development corporation, and the respondents can glean but small comfort from this lawsuit. Nevertheless, the housekeeping expenditure involved in the case at bar and also the declaration of public purpose contained in the statute are entitled to our approval.

We cannot at this point determine whether the corporations which may be created under this law will carry out the lofty purposes of the statute in a constitutional manner. The powers given to industrial development corporations under this enactment are so extensive that such a corporation might confer a direct benefit to a private industry with only a remote benefit to the general public; such action would be abhorrent to the constitution of Wisconsin even if it were deemed consistent with the statute. The possibility of operational illegality does not of itself condemn the legislation because, as noted earlier, we presume constitutionality, and the relator has not presented us with facts demonstrating that the instant expenditure is not for a valid public purpose under the statute.

The stamina of the presumption of constitutionality was well stated by Mr. Justice HEFFERNAN in our recent decision in *Gottlieb v. Milwaukee* (1967), 33 Wis. (2d) 408, 415, 147 N. W. (2d) 633, 637:

"All legislative acts are presumed constitutional, and every presumption must be indulged to sustain the law if at all possible. *State ex rel. McCormack v. Foley* (1962), 18 Wis. (2d) 274, 279, 118 N. W. (2d) 211; *School Dist. v. Marine Nat. Exchange Bank of Milwaukee* (1960), 9 Wis. (2d) 400, 403, 101 N. W. (2d) 112. If any doubt exists it must be resolved in favor of the constitutionality of a statute. *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 558, 564, 61 N. W. (2d) 903. We as a court are not concerned with the merits of the legislation under attack. We are not concerned with the wisdom of what the legislature has done. We are judicially con-

cerned only when the statute clearly contravenes some constitutional problem. *Chicago & N. W. R. Co. v. La Follette* (1965), 27 Wis. (2d) 505, 521, 135 N. W. (2d) 269."

A trial could establish the facts necessary to rebut the presumption of constitutionality to which the statute is entitled. This was the ruling of the Minnesota supreme court in *Port Authority of City of St. Paul v. Fisher* (1964), 269 Minn. 276, 132 N. W. (2d) 183. That case involved a related type of statute wherein the port authority was authorized to purchase land with public funds and to lease it to a private corporation. The issue was presented to the Minnesota supreme court via summary judgment; no testimony was presented in the trial court. The Minnesota court, at page 296, commented upon the difficulty of resolving the public-purpose doctrine in the absence of a factual trial:

"We think numerous genuine issues exist, which were not litigated at the trial court level—facts which are material to a determination of whether the proposed lease and revenue bond issuance are for a public purpose. The record is not only unclear with regard to the purpose the Port Authority intends to accomplish by the proposed lease and revenue bond issuance; it is also devoid of facts which are material to determining whether the contemplated purpose is, in actuality, public."

The Minnesota court then remanded the case for trial and suggested a number of questions which should be determined in order to resolve the public-purpose issue.

Cases in other states involving industrial development legislation demonstrate how essential it is that the court be enabled to examine the operational facts concerning an expenditure in order to determine whether a direct benefit to the public results. *Gaylord v. Beckett* (1966), 378 Mich. 273, 144 N. W. (2d) 460; *Green v. City of Mt. Pleasant* (1964), 256 Iowa 1184, 131 N. W. (2d) 5; *DeArmond v. Alaska State Development Corp.* (Alaska, 1962), 376 Pac. (2d) 717.

There are a number of Wisconsin cases, some of which are relied upon by the relator, which suggest that the promotion of a private enterprise may be an improper function of government. In *Suring v. Suring State Bank* (1926), 189 Wis. 400, 207 N. W. 944, the action of a village in conveying property to a private manufacturing company was held to be *ultra vires*. The transfer in that case, however, was not the result of a legislative enactment and did not enjoy the benefit of the legislative declaration that it was needed to relieve economic insecurity within the state. This feature also distinguishes *Hermann v. Lake Mills* (1957), 275 Wis. 537, 82 N. W. (2d) 167, and *Kiel v. Frank Shoe Mfg. Co.* (1942), 240 Wis. 594, 4 N. W. (2d) 117. Those cases stand for the following proposition, as asserted in the *Hermann Case,* at page 542:

"It necessarily follows that a transfer of municipal property to a manufacturing corporation in return for a payment representing only part of the fair market value of the property, which is knowingly made for the purpose of promoting industrial expansion, is equally beyond the power of the municipality."

When the legislature determines that public policy requires the priming of the pump and authorizes the creation of agencies to perform that function, there is nothing automatically *ultra vires* in the creation of such agencies or in their pump-priming operations. The crucial question will be whether the water used to prime the pump is returned to the public in sufficient degree so as to negate the suspicion that a private benefit is foremost.

We do not believe that *State ex rel. American Legion 1941 Convention Corp. v. Smith* (1940), 235 Wis. 443, 293 N. W. 161, is controlling in the case at bar. There we held that no public purpose was served by giving an advance deposit to the American Legion in hopes that such group would hold its 1941 convention in Milwaukee. However, it was uncertain that the convention would be

held in Milwaukee or that the money advanced would be refunded if the convention were held elsewhere. In addition, the court held that the possibility of public benefit was too remote and uncertain to sustain the expenditure.

*Other Constitutional Considerations.*

We will now consider several other constitutional flaws which are ascribed to this enactment by the relator. The contention is advanced that sec. 59.071, Stats., provides for the creation of state or municipal debt in excess of constitutional limits. Sec. 4, art. VIII, and sec. 3, art. XI, Wisconsin constitution. A second constitutional challenge is based on the relator's claim that the Industrial Development Law violates sec. 3, art. VIII of the Wisconsin constitution in regard to the lending of the credit of the state in aid of "any individual, association or corporation."

Sec. 59.071, Stats., expressly provides that an agency created under the act has no authority to create debts on behalf of the state or any municipality. Sub. (4) (d) of sec. 59.071 provides in part as follows:

"The agency shall have no power at any time to pledge the credit or taxing power of the state, any county, or any municipality or political subdivision, but all of its obligations shall be deemed to be obligations solely of the agency."

The absence of a legally enforceable debt against the state or municipality renders the statute immune to the relator's objection that a state debt has been created. In *Glendale Development v. Board of Regents* (1960), 12 Wis. (2d) 120, 135, 106 N. W. (2d) 430, the court said: "This court has heretofore held that no state debt is created unless the state itself is under a legally enforceable obligation." Similarly, no municipal debt is created where there is no municipality under a legally enforceable obligation. In *State ex rel. La Follette v. Reuter* (1967), 33 Wis. (2d) 384, 405, 147 N. W. (2d) 304, 316,

this court said that "The terms 'debt' and 'indebtedness' as they appear in sec. 3, art. XI, and sec. 4, art. VIII, Const., have the same meaning in regard to both state and municipal debts."

The express negation of an industrial development corporation's power to pledge the credit of the state or municipality also protects the enactment from the alleged violation of sec. 3, art. VIII, Wisconsin constitution. There can be no clash with such constitutional provision unless the giving of credit results in a legally enforceable obligation against the state. *State ex rel. La Follette v. Reuter, supra; State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 72 N. W. (2d) 577; *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 197, 277 N. W. 278, 280 N. W. 698.

The relator also claims that the Industrial Development Law violates sec. 10, art. VIII of the Wisconsin constitution in that it permits works of internal improvement. This contention fails because this court has frequently held that the internal improvement provision applies only to works engaged in by the state; it is not applicable to activities carried on by a governmental subdivision of the state. See *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 206, 60 N. W. (2d) 873. In *Redevelopment Authority v. Canepa* (1959), 7 Wis. (2d) 643, 651, 97 N. W. (2d) 695, we said:

"It has been held from almost the beginning of the state that while the state is subject to the prohibitions . . . [against] carrying on of works of internal improvement, governmental units created by the state and carrying on their public functions in particular localities or geographical subdivisions of the state are not so subject. *Bushnell v. Beloit* (1860), 10 Wis. *195; *Clark v. Janesville* (1859), 10 Wis. *136; *Jensen v. Board of Supervisors* (1879), 47 Wis. 298, 2 N. W. 320."

It is also claimed that the powers given under the statute to county boards are excessive under sec. 22, art. IV

of the Wisconsin constitution. That section provides as follows:

"The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe."

In support of this argument, the relator points to *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 53 N. W. (2d) 514, 55 N. W. (2d) 40. In that case, we declared unconstitutional a statute which provided that the public service commission need not make findings as to whether a proposed dam would violate public rights to the enjoyment of fishing, hunting, and natural scenic beauty if the county boards of the counties where the dam and flowage were to be located approved the construction of the dam by a two-thirds vote. The court noted that a particular county should not be permitted to take action which would impair a navigable stream and thereby adversely affect the interests of the people of the entire state.

In the *Muench Case* there was an obvious conflict between the statewide interests and local interests. If the county were free to develop the dam in a manner consistent with its own desires it might impinge upon the rights of other citizens to hunt, fish, and enjoy the scenic beauty of the stream. However, in the case at bar, there is no potential conflict between state and local rights, and we see no need to engage in a balancing of interests under the *Muench Case* to determine whether the state interest or the local interest is paramount.

Is sec. 59.071, Stats., a special law in violation of sec. 31, art. IV of the Wisconsin constitution? The relator claims that under *State ex rel. Church Mut. Ins. Co. v. Cheek* (1890), 77 Wis. 284, 46 N. W. 163, the Industrial Development Law is such a "special law." The *Church Mut. Case* involved a statute authorizing members of the Methodist Episcopal Church to form an insurance cor-

poration. This was held to be a special or private law, and the court indicated, at page 287, that the purpose and object of the act was "to authorize the incorporation and organization of only one corporation."

The *Church Mut. Case* has been interpreted as holding the statute involved to be unconstitutional because it authorized but a single corporation. *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 341, 65 N. W. (2d) 529; *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 60 N. W. (2d) 873. In the 1953 *Giessel Case,* at page 198, the court noted that the statute involved in such case "indicates that the organization of more than one corporation is contemplated." The court went on to hold that the statute "provides the machinery for the establishment of any number of turnpike corporations as the needs may arise, and it is therefore not violative of the prohibition contained in sec. 31, art. IV of the constitution."

The Industrial Development Law permits any county to form an industrial development agency and also permits adjoining counties to form agencies together. It is not a particularized act providing for the establishment of only one corporation, which is the evil at which the constitutional provision is aimed. As the need arises in various counties throughout the state, industrial development agencies may be created under sec. 59.071 (4), Stats.

## Conclusion.

We conclude that the relator has not met the burden of presenting facts which would enable this court to declare the Industrial Development Act unconstitutional. We do not purport, however, to uphold the constitutionality of sec. 59.071, Stats., as applied to any *modus operandi* which is not before us. With regard to the public-purpose doctrine we go no further than to hold that the disbursement by the county treasurer of Milwaukee county of a

sum to be used for the Milwaukee County Industrial Development Corporation's operating expenses does not on its face violate any constitutional provisions.

*By the Court.*—Sec. 59.071, Stats., is declared to be constitutional, as limited in the opinion.