PAUL L. BROWN, Director, Bureau of Facilities Management,Department of Administration
You have requested my opinion as to whether the authority of sec. 518 (1) (k), ch. 125, Laws of 1971, may be exercised under Art. VIII, sec. 7, Wis. Const.
Section 518 of ch. 125, Laws of 1971, is the enumerated or authorized state building program and subsection (1) (k) provides:
 "Relocation assistance. Projects financed by borrowing. General fund supported. Relocation assistance $1,000,000 Total general fund supported ----------- bonding authority $1,000,000"
Section 7 (2) (a) of Art. VIII, Wis. Const., provides:
"(a) The state may contract public debt and pledges to the payment thereof its full faith, credit and taxing power to acquire, construct, develop, extend, enlarge or improve land, waters, property, highways, buildings, equipment or facilities for public purposes."
The question presented is whether the payment of relocation costs or benefits constitutes, within the meaning of the above quoted constitutional language, the acquiring, constructing, developing, extending, enlarging or improving land, waters, property, highways, buildings, equipment or facilities for public purposes.[1]
Under the language of sec. 32.19, Stats., it is apparent that the legislature inexorably related relocation benefits to the acquisition of land. The decision in State ex rel. Bowman v.Barczak (1966), 34 Wis.2d 57, 148 N.W.2d 683, makes it clear however, that the final *Page 44 
authority, as to the validity of legislative conclusions, rests with the court. Any question as to legislative propriety in requiring the payment of relocation assistance benefits, under sec. 32.19, Stats., in the acquiring of lands, has been largely settled by the decision in Luber v. Milwaukee County (1969),47 Wis.2d 271, 177 N.W.2d 380. The Luber decision concluded that payment for rental loss under sec. 32.19 (4), Stats., was proper under the "just compensation" clause of Art. I, sec. 13, Wis. Const.
Accordingly, it is my opinion that relocation assistance payments are a valid and direct cost of acquiring land. Further, as relocation assistance payments or benefits are a legitimate cost of acquisition, the cost of such payments may be debt financed under the constitutional language previously quoted and particularly that language which reads:
"The state may contract public debt . . . to acquire . . . land . . ."
In considering the question at hand, it seems appropriate to include a caveat as to the nature of state debt financing under sec. 7 (2) (a) of Art. VIII, Wis. Const.
The drafters of the constitutional amendment were well aware of the intent of the legislature to eliminate the system of [state] debt financing through the private, nonstock, nonprofit building corporations. These corporations had been employed to finance state capital expenditures such as the acquisition of lands, the construction of highways, bridges and buildings.[2]
The legislative history behind the enactment of the constitutional amendment allowing state debt shows that it was the intent to restrict debt financing to capital expenditures or in other words, to have the state assume the capital funding operations of the building corporations. *Page 45 
When the question, as to whether the state constitution should be amended, was submitted to the people, an explanatory statement was given under sec. 10.01 (1) (c), Stats. This statement made it clear that the proposed constitutional amendment would preclude future financing of public improvements through the numerous state building corporations. The question as submitted to the people for ratification of the proposed amendment, was similarly worded.[3]
It was the intent of the legislature, which intent was conveyed to the citizens of this state, that the amendment in question be used for the purpose of funding capital expenditures as distinct from operating expenditures. Accordingly, whenever new debt funding proposals are suggested, care should be exercised to insure that such proposals are for capital expenditures.
RWW:CAB
[1] Before considering the constitutional question, it was felt necessary to consider whether legislation exists to support such debt financing. Appropriate authority was found in reviewing sec. 518, ch. 125, Laws of 1971, subsecs. (ca), (d), (h), (k); sec. 20.866 (2) (z), Stats., and sec. 20.710 (3) (b), Stats. Although necessary legislation exists, it is unfortunate it exists in such a confused manner. It is my personal view that this state of confusion and difficulty will worsen in the future and become unbearable if a more direct and straight forward legislative approach is not devised.
[2] As an example of statutory authority for the financing of such capital expenditures, see sec. 36.06, Stats. In a memo to this office, written by a private law firm actively engaged in advising the legislature on the Amendment, it was stated thus: "Debt is permitted for certain stated purposes, all of which are capital in nature and are basically the same as the purposes for which the building corporations now incur debt."
[3] Assembly Jt. Res. 1, Laws of 1969.