PATRICK H. STIEHM, District Attorney, Washburn County
You have asked me to clarify the county's authority to remove snow from private roads and driveways under the authority of sec.86.105, Stats. Specifically, you ask whether this authority would permit the county to contract to plow private parking lots or private *Page 305 
driveways. I conclude, for the reasons discussed below, that the statute must be construed extremely narrowly to include several restrictions not explicitly set forth in the statute and, as so construed, would not authorize the plowing of parking lots. Only in exceptional circumstances would the plowing of private driveways be permissible.
Section 86.105, Stats., provides:
 "The governing body of any county, town, city or village may enter into contracts to remove snow from private roads and driveways."
In order to place the interpretation of this section in proper context, a review of the controversies surrounding efforts to authorize local units of government to construct or repair private roads and driveways is necessary.
In February, 1947, one of my predecessors determined that there was no statutory authority for a county to "do highway work for private individuals." 36 Op. Att'y Gen. 69 (1947). Counties have only such legislative powers as are expressly granted by statute or necessarily implied. Maier v. Racine Co., 1 Wis.2d 384,84 N.W.2d 76 (1957). To remedy this perceived deficiency in the law, the Legislature passed, over the Acting Governor's veto, ch. 457, Laws of 1947, which provided:
 "PRIVATE ROAD WORK BY MUNICIPALITIES AND COUNTIES. Any town, city, or village, by its governing body, may enter into contracts to build, grade, drain, surface, and gravel private roads and driveways. Any county, by its governing body, may enter into agreements with a municipality to perform for it any such work."
The constitutionality of this statute was challenged when the Ozaukee County Board relied on its provisions the following year.Heimerl v. Ozaukee County, 256 Wis. 151, 40 N.W.2d 564 (1949). In declaring the statute to be unconstitutional, the court began its analysis by finding that the building of private roads is not a public purpose. It further found that the methods to be used in implementing the statute were not sufficiently narrowly defined to ensure against additional elements of impermissible private advantage. Specifically, the court listed three areas where the statute was too broad in its authorization and by implication suggested *Page 306 
minimum provisions to ensure: 1) the road's necessity for ingress and egress. 2) accounting procedures to protect taxpayers and 3) avoidance of competition with private operators. The court, in finding that there were insufficient safeguards to protect taxpayers, reasoned in part:
 "Even if the county highway department required payment of every item properly chargeable for work done by authority of the resolution and without any ultimate cost to the county (which sec. 86.106, Stats., does not provide), until it received compensation from the city, village, or town, it would have the taxpayers' money invested in the work, money raised by a tax levy. . . ." Id. at 158.
The court, in the course of the opinion, found other deficiencies in the legislation, including a conferring of powers upon county boards which are not local, legislative or administrative in character in contravention of Wis. Const. art. IV, sec. 22. Id. at 159.
Early in the next session of the Legislature, another bill was drafted which authorized operation or lease of county equipment on privately owned lands only under narrowly drawn circumstances. Under the bill, Substitute Amendment 1, A., to Bill No. 291, A., 1951 Session, county work was authorized only if other state work was not prejudiced and other equipment was not available in the county, if there was full prepayment at rates comparable to the charges made to the state, and if the road connected the main building to a public road.
These provisions were found not sufficient in 40 Op. Att'y Gen. 59 (1951), to overcome the three objections specifically made by the supreme court in that the private roads might not be necessary, the actual cost of construction might exceed the estimated cost which had been paid and private equipment might be available in a neighboring county, but a short distance away.
Shortly thereafter, another bill, Substitute Amendment No. 1, S., to Senate Bill 614, was introduced to accomplish the same purposes as the legislation discussed, supra. Although upon review it was found apparently to have met the objections enumerated by the supreme court in Heimerl, it was concluded that: *Page 307 
 ". . . There remains a distinct possibility that the proposed law might still be declared unconstitutional upon the grounds that the power granted is not local, legislative and administrative in character, that there is no direct advantage to the health, safety and welfare of the community as a whole, and that it authorizes the county to engage in private business. The language of the court in the Heimerl case is quite broad in this regard, and therefore it cannot be said that the constitutionality of the proposed statute is free from doubt." 40 Op. Att'y Gen. 151, 153 (1951).
In 1961, almost verbatim, the process was repeated. 50 Op. Att'y Gen. 98, 102 (1961).
This brief review suggests the difficulties inherent in properly circumscribing local governmental activity in this area. In this context, I believe that for activity under sec. 86.105, Stats., to be constitutional, it must address the problem areas recognized in Heimerl as discussed in prior opinions of the Attorney General. My conclusion is based on historical considerations as well as established doctrine related to the definition of public purpose.
At the outset, it is relevant to note that secs. 86.105 and 86.106 were enacted within weeks of each other, are in substantially the same form and concern similar governmental activity. Further, the process whereby the court in Heimerl was provided the occasion to review sec. 86.106, Stats., may have only accidentally prevented it from reviewing sec. 86.105, Stats.[1] Confronted by such a limitation in the record, the court nevertheless may have intended its discussion of limitations on the means to accomplish a proper end would apply to the companion statutory provision as well, although not technically before it.
This reading is consistent with the analytical process used by the court in Heimerl. The court first analyzed whether the purpose of the activity authorized by sec. 86.106 was essentially public or private. It *Page 308 
concluded that the activity was essentially private. That conclusion, once reached, provided sufficient analysis. The court, however, proceeded to examine additional problems related to method of finance, competition with private business and other matters that would only be relevant to defining the means to accomplish a proper purpose.
In the course of its opinion in Heimerl, the court proposed a proper purpose for sec. 86.105, Stats., considerably narrower than the plain words of the statute:
 ". . . It is common knowledge that when public highways are snowplowed, large amounts of snow are piled into private driveways, thereby creating a greater obstruction than already existed. Then, too, this section is distinguished from sec. 86.106, for the removal of snow is an emergency situation and the public safety of the community in general is directly affected." Heimerl, at 156.
The similarities between secs. 86.105 and 86.106, and the likely application of the narrow standards proposed in Heimerl to sec. 86.105, have been noted:
 ". . . sec. 86.105 . . . authorizes the governing body of any county, town, city or village to enter into contracts to remove snow from private roads and driveways. Obiter dicta found in the Heimerl case, at page 156, would indicate that this statute might survive a constitutional test in our supreme court; yet the same statute has many of those defects which led the court, in the Heimerl case, to declare sec. 86.106, `too broad in its powers'. See pages 160, 161. It permits snow removal by the governing bodies therein mentioned without regard to any connection between such removal and the necessity of getting to and from the public road; it sets up no structure for charges and disbursements so that all taxpayers may be equally protected; and it makes no restriction as to those counties or towns where private road builders are equipped to operate. . . ." 50 Op. Att'y Gen. 98, 101 (1961).
Further caution in implementing sec. 86.105, Stats., is warranted because the recognition of the existence of a public purpose in a specific activity is dependent on contemporary public opinion as well as the ability of the private sector to meet the needs existing in the *Page 309 
community at large.[2] As noted in State ex rel. Bowman v.Barczak, 34 Wis.2d 57, 64-65, 148 N.W.2d 683 (1967), approving language in State ex rel. Wisconsin Dev. Authority v. Dammann,228 Wis. 147, 180, 277 N.W. 278, 280 N.W. 698 (1938):
 "`"Times change. The wants and necessities of the people change. The opportunity to satisfy those wants and necessities by individual efforts may vary. . . . [The] two tests [of a public use] are: First, the subject matter, or commodity, must be one of `public necessity, convenience or welfare.' . . . The second test is the difficulty which individuals have in providing it for themselves."'" Laughlin v. City of Portland, 111 Me. 486, 90 A. 318, 320, 323
(1914).
While the definition of public purpose is generally acknowledged as becoming more inclusive, Bowman, supra, at 64-65,State ex rel. Wisconsin Dev. Authority v. Dammann, supra, at 180, the increased availability of snow removal equipment and related technologies in the private sector[3] suggests a narrowing of the term in the present circumstances.
Because the supreme court has, by implication, upheld the constitutionality of sec. 86.105, Stats., but in the course of doing so established stringent guidelines for accomplishing such an apparently proper goal, and because I concur with my predecessors' close examination of subsequent efforts to narrowly define proper means to such a goal, I conclude that the county may not, pursuant to sec. 86.105, Stats., plow private parking lots. I further conclude that local governmental activity in this area, including plowing private driveways, should be undertaken only when necessary with proper payment mechanisms and respecting available private alternatives.
BCL:JFS
[1] There is evidence to suggest that this limitation may have been the result of a clerical error. The challenged Board resolution purported to authorize county activity by setting forth verbatim the language of sec. 86.106, Stats., denominating it as such, and also setting forth the verbatim language of sec.86.105, Stats., but denominating it sec. 86.106, Stats. Thus, the resolution authorized action under both sections, but only referenced sec. 86.106. This discrepancy is nowhere referenced in the appellate briefs or by the court.
[2] See generally, Mills, "The Public Purpose Doctrine in Wisconsin," 1957 Wis. L. Rev. 282; Eich, "A New Look at the Internal Improvements and Public Purpose Rules," 1970 Wis. L. Rev. 1113.
[3] "The legislature apparently had in mind that there were few persons or companies with the necessary heavy equipment to properly plow driveways in the winter time. Obviously, as the county has the machinery to plow public highways, they should be permitted to plow snow on private property." Appellant Ozaukee County's supreme court brief at 15. *Page 310